1

2

3

4                    UNITED STATES DISTRICT COURT

5                   NORTHERN DISTRICT OF CALIFORNIA

6

7    SYED ABU TAHIR,                         Case No. 18-cv-03675-HSG

8                 Plaintiff,                 **ORDER DENYING PLAINTIFF'S**
                                             **MOTION FOR SUMMARY**
9           v.                               **JUDGMENT AND GRANTING**
                                             **DEFENDANT'S MOTION FOR**
10   NANCY A. BERRYHILL,                      **SUMMARY JUDGMENT**

11               Defendant.                  Re: Dkt. Nos. 23, 24, 25

12

13          The former Acting Commissioner of the Social Security Administration ("SSA"), Nancy

14   A. Berryhill ("Defendant"), acting in her official capacity, denied Plaintiff Syed Abu Tahir's

15   ("Plaintiff") application for Period of Disability and Disability Insurance Benefits ("DIB") under

16   Title II of the Social Security Act ("Act").  *See* 42 U.S.C § 423(d)(1)(A); Dkt. No. 1.  Plaintiff

17   seeks judicial review of that decision.  *See* Dkt. No. 1.  On February 2, 2019, Defendant filed a

18   transcript of the administrative record with the Court.  *See* Dkt. No. 17 ("AR").  Plaintiff filed his

19   motion for summary judgment on June 10, 2019.  *See* Dkt. No. 23 ("Pl. Mot.").  Andrew Saul, the

20   Acting Commissioner of the SSA, responded with a cross-motion for summary judgment on July

21   8, 2019.  *See* Dkt. No. 24 ("Def. Mot.").  Plaintiff subsequently filed a reply brief on July 22,

22   2019.  *See* Dkt. No. 25 ("Rep.").  For the reasons set forth below, the Court **DENIES** Plaintiff's

23   motion for summary judgment, and **GRANTS** Defendant's motion for summary judgment.[1]

24   **I.     BACKGROUND**

25          **A.     Factual Background**

26          Plaintiff was born on December 1, 1970.  AR 28.  He completed medical school in

27   ───────────────

28   [1] The Court finds that this matter is appropriate for disposition without oral argument, and the
     matter is deemed submitted.  *See* Civil L.R. 7-1(b).

*United States District Court*
*Northern District of California*

Pakistan and attended one year of residency for internal medicine in Boston, but did not complete his residency. AR 17. He has prior relevant work experience as a biochemist tech, research assistant, public health consultant, and salesclerk. AR 28.

Plaintiff was diagnosed as HIV positive in 2008, which led to recurring depressive symptoms. AR 17. He testified that his last job was at Genentech in November 2013, but he quit after a depressive episode. *Id*. He reported being generally happy at his job until he was reassigned to another group (leaving him stressed and depressed). *Id*. Plaintiff then quit in search of a new job, but quitting left him feeling depressed, "worthless, defeated, [and] lost." AR 51-52.

### 1. Plaintiff's Medical Condition

Plaintiff alleges that he has severe impairments and suffers from HIV, mild degenerative joint disease, type II diabetes, high blood pressure, and depression. AR 12. He testified that he struggles with a "really debilitating depression" that affects his short term memory, ability to concentrate and complete tasks, get out of bed, shower, pay bills on time, and interact with people, and generally inhibits him from completing various other daily tasks. AR 49-59. Plaintiff testified that he used to be a lively person, but that he now has no friends and gets anxiety when he is around others or leaves the house for more than "10 or 15 minutes." AR 57. To treat his various health conditions, Plaintiff sees a psychiatrist (who has prescribed various different medicines to help his mental conditions), goes to therapy weekly, and regularly sees his treating physicians (who have prescribed drugs to combat his HIV and diabetes). AR 53-59.

Physically, Plaintiff claims that he has uncontrolled diabetes. AR 53. Plaintiff takes medications for HIV, but those medications allegedly cause joint pain, skin infections, and stomach issues. AR 53-54. Additionally, Plaintiff contends he has severe fatigue and an inability to sleep through the night that subsequently interferes with his ability to perform daily tasks. AR 54-55. Plaintiff states that his appearance has changed and that he has lost "significant weight" because of his constant fatigue and lack of energy. AR 56.

### 2. Plaintiff's Physicians and Experts

####     a. Dr. Dan Wlodarczyk, M.D. and Nurse Practitioner John Friend

Dr. Dan Wlodarczyk, M.D., Plaintiff's treating physician, and Nurse Practitioner John

United States District Court
Northern District of California

Friend ("NP Friend"), completed a medical report on May 26, 2015.  AR 669-71.  As a result of his HIV diagnosis, Plaintiff has allegedly suffered from chronic fatigue and severe depression which have led to difficulties in social functioning, completing tasks in a timely manner, and engaging in daily living activities.  *Id.*  The medical report noted that Plaintiff's depression appeared to be disabling.  *Id.*  On October 5, 2015, Dr. Wlodarczyk found that Plaintiff could occasionally lift/carry 20 pounds and sit without limit.  AR 717-19.  On July 6, 2015, Dr. Wlodarczyk also wrote that Plaintiff described a severely depressed mood, anxiety, and social isolation.  AR 719.

b.  Dr. Dan Karasic, M.D.

Dr. Dan Karasic, M.D. is a member of the Positive Health Practice Ward at San Francisco General Hospital.  AR 678-95; 728-29; 801-02.  He saw Plaintiff at least four times since Plaintiff began receiving treatment there in April 2015.  AR 678-96, 721-33.  Dr. Karasic performed a psychiatric evaluation of Plaintiff on March 15, 2016.  AR 735.  Dr. Karasic wrote that Plaintiff had expressed that he was constantly depressed, had low energy, poor appetite, fatigue, and hopelessness.  AR 735.  He noted that Plaintiff was depressed since leaving his job in 2013.  *Id.*  Dr. Karasic also found that Plaintiff's demeanor was calm, but that he was persistently depressed, had poor concentration, and was forgetful.  AR 737.

Additionally, Dr. Karasic found that Plaintiff was markedly impaired with daily activities (showering, cleaning, cooking, eating, and paying bills), and in social functioning.  AR 737.  Dr. Karasic wrote that Plaintiff had low energy and difficulty managing stressful situations, and is forgetful with scheduling.  *Id.*  He diagnosed Plaintiff with Major Depressive Disorder, recurrent and severe, and HIV.  However, his treatment notes generally show some improvements in regard to Plaintiff's depressive symptoms, although these do not appear to be permanent changes.  AR 678, 728, 802, 801.

c.  Marriage and Family Therapist Michael Ahern, M.F.T.

Marriage and family therapist Michael Ahern, M.F.T. ("Therapist Ahern") wrote on October 31, 2017, that Plaintiff's depressive symptoms have been present for about five years.  AR 852.  Plaintiff expressed that his depressive symptoms occur most days of the week.  *Id.*  He

United States District Court
Northern District of California

1    wrote that Plaintiff's affect and demeanor were consistent with someone with severely depressed

2    mood, and noted that Plaintiff occasionally missed appointments (about one in four) by not

3    showing up and failing to notify him in advance.  AR 852-54.  In terms of working, he estimated

4    that Plaintiff would be absent from work approximately four or more days per month as a result of

5    his impairment, and that he was likely not prepared to return to work in any manner for the next

6    year because he would not be able to perform any job due to his impairments.  AR 856.

7          However, Therapist Ahern saw signs of improvement due to treatment.  AR 854-56.  On

8    January 11, 2017, he noted that Plaintiff reported that his depression was lessening and that he was

9    seeing progress because of therapy, but that the severity of his depression still remained strong.

10    AR 755.  On February 16, 2017, Therapist Ahern described Plaintiff as feeling less depressed, that

11    his depression was improving, and that he was well medicated, but that improvement was slowed.

12    AR 762.  On March 1, 2017 Therapist Ahern also noted that Plaintiff was exercising more and

13    engaging with people, but still reported that he felt like he had not made improvements.  AR 764.

### 3.    State-Agency Consultative Examining Physician

#### a.    Dr. Faith Tobias, PhD

16          When Plaintiff was tested by Dr. Tobias, he was found to be markedly impaired in

17    psychomotor speed, visual scanning, and sequencing per Part A and Part B of the Trail Making

18    Test.  AR 705.  When Plaintiff took the WAIS-IV sub-tests on Digital Span, Symbol Search, and

19    Coding, he was in the borderline level of ability in attention and concentration (Digital Span), the

20    borderline ability as to processing speed, visuomotor coordination, cognitive flexibility, and

21    concentration (Symbol Search), and an extremely low level of ability in the Coding sub-test.  AR

22    705-06.  Dr. Tobias also noted that Plaintiff put forth a decreased effort and had a lack of

23    motivation due to depression during the testing, which showed generally lower results than

24    someone of his education and work history.  *Id*.

25          Dr. Tobias opined on September 21, 2015 that Plaintiff had (1) no impairment in his ability

26    to follow or remember simple and complex instructions; (2) none to a mild impairment in his

27    ability to perform simple routine tasks and interact with others; (3) a mild impairment in his ability

28    to adapt to any changes in job routine; (4) a mild-moderate impairment to maintain adequate pace

United States District Court

Northern District of California

4

1    and persistence when performing complex tasks; and (5) a moderate impairment in his ability to

2    maintain emotional stability when handling the stress of a routine workday.  AR 85.

3                        b.   Dr. Catherine Blusiewicz, M.D.

4             State agency medical consultant Dr. Catherine Blusiewicz, M.D. saw Plaintiff and opined

5    on October 20, 2015, that he (1) could "understand and recall simple instructions;" (2) could

6    "sustain concentration for 2+ hours, and would perform simple instructions with appropriate

7    sustained concentration, persistence, and pace;" (3) had adequate interpersonal skills that would

8    enable him to communicate and interact with others in a satisfactory way for basic work functions,

9    but that he occasionally would have difficulty interacting with the public and co-workers; and (4)

10   had "adaptive functional ability and could respond…appropriately to changes in a routine work

11   setting."  AR 77.  Additionally, Dr. Blusiewicz wrote that the opinion by Dr. Wlodarczyk and NP

12   Friend was less persuasive because it relied heavily on subjective reports and symptoms (which

13   the totality of evidence did not support).  *Id*.  In conclusion, Dr. Blusiewicz found that Plaintiff

14   was not disabled.  AR 79.

15                       c.   Dr. Kim Morris, PsyD

16            Dr. Kim Morris, PsyD, performed a Mental Residual Functional Capacity Assessment and

17   opined on June 22, 2016 that Plaintiff (1) had the ability to sufficiently remember and understand

18   both simple and detailed instructions; (2) had the ability to sufficiently complete simple and

19   detailed instructions while maintaining "adequate attention, concentration, [and] persistence as

20   needed to complete a full work day/work week;" (3) had the ability to sufficiently maintain

21   appropriate behavior with limited peer and public contact; and (4) is sufficiently aware of ordinary

22   work hazards, can make simple decisions, and is able to cope with the demands of a routine work-

23   life environment.  AR 94-96.  Dr. Morris also wrote that Dr. Wlodarczyk and NP Friend's opinion

24   relied heavily on subjective reports and symptoms, and thus was less persuasive.  AR 97.

25                       d.   Dr. Bradus, M.D.

26            Dr. Bradus performed a Physical Residual Functional Capacity Assessment of Plaintiff and

27   opined on June 9, 2016 that Plaintiff could occasionally lift or carry up to 20 pounds, frequently

28   lift or carry up to 10 pounds, and stand, walk, or sit for approximately 6 hours in a normal 8 hour

United States District Court
Northern District of California

workday.  AR 93-94.  He found that because of Plaintiff's HIV, mild degenerative joint disease, and side effects of medications, it would be reasonable to limit Plaintiff to light work.  AR 94.  In conclusion, Dr. Bradus found that Plaintiff was limited to unskilled work because of his impairments, but that he was not disabled and his condition was not severe enough to keep him from working.  AR 98-99.

### B.    Legal Framework of the Social Security Act

To qualify for DIB, the claimant must be "disabled" as defined by the Act.  Both benefit programs define disability as an individual's inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); *see also* 20 C.F.R. § 404.1505; *id*. § 416.905.  The SSA deems a person disabled only if:

> [H]is physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.  For purposes of the preceding sentence (with respect to any individual), "work which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

42 U.S.C. § 423(d)(2)(A); *id*. § 1382c(a)(3)(B).

### 1.    Five-Step Process for Evaluating Claimant's Disability Claim

When the claimant is dissatisfied with the initial and reconsidered decisions by the SSA, the claimant may request a hearing in front of an administrative law judge ("ALJ").  20 C.F.R. §§ 404.929, 416.1429.  The ALJ will issue a new decision based on the preponderance of the evidence developed in the hearing record and in the file.  *Id.* §§ 404.929, 416.1429.  To determine whether the claimant qualifies for disability benefits under Social Security law, the ALJ utilizes a five-step sequential evaluation process.  *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001).

6

United States District Court
Northern District of California

a.   Step One: Substantial Gainful Work Activity

At step one, the ALJ determines whether the claimant is currently engaged in work activity that is substantial and gainful.  *Id*. § 404.1520(a)(4)(i), (b); *id*. § 416.920(a)(4)(i), (b).  Substantial work activity "involves doing significant physical or mental activities . . . even if it is done on a part-time basis" or requires "do[ing] less, get[ting] paid less, or hav[ing] less responsibility than when [the claimant] worked before."  *Id*. §§ 404.1572(a), 416.972(a).  "Gainful work activity is work activity that [the claimant] do[es] for pay or profit . . . whether or not a profit is realized."  *Id*. §§ 404.1572(b), 416.972(b).  If the claimant is not presently working in substantial gainful activity, step two is analyzed.  However, if the claimant is engaged in substantial gainful activity, the claimant is not disabled (regardless of any medical condition or the claimant's age, education, or work experience).  *Id*. § 404.1520(a)(4)(i), (b); *id*. § 416.920(a)(4)(i), (b).

b.   Step Two: Medical Severity of Impairment

If the claimant is not presently engaged in substantial gainful activity, the ALJ determines whether the claimant's alleged impairments are medically severe.  *Id*. § 404.1520(a)(4)(ii), (c); *id*. § 416.920(a)(4)(ii), (c).  If the claimant lacks "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities," then the impairments are not severe.  *Id*. §§ 404.1520(c), 404.1521(a), 416.920(c), 416.921(a). "Basic work activities" are "the abilities and aptitudes necessary to do most jobs," including physical functioning, sensory capacity, following instructions, use of judgment, and responding appropriately to routine work situations (including supervision and interactions with co-workers), and dealing with changes to work routines.  *Id*. §§ 404.1521(b), 416.921(b).  Additionally, "[u]nless [the claimant's] impairment is expected to result in death, it must have lasted or must be expected to last for a continuous period of at least 12 months."  *Id*. §§ 404.1509, 404.1520(a)(4)(ii), 416.909, 416.920(a)(4)(ii).  If the claimant does not meet these requirements, then he is not disabled (regardless of any medical condition or the claimant's age, education, or work experience.  *Id*. § 404.1520(a)(4)(ii), (c); *id*. § 416.920(a)(4)(ii), (c).  Step three is analyzed if the claimant's impairments are severe.  *Id*.

7

1

        c.  <u>Step Three: Listed Impairment</u>

2         If the claimant has a severe impairment, the ALJ determines whether the claimant's

3  impairment, or combination of impairments, medically "meets or equals" an impairment listed in

4  20 C.F.R., pt. 404, subpt. P, app. 1. *Id*. § 404.1520(a)(4)(iii), (d); *id*. § 416.920(a)(4)(iii), (d); *see*

5  *also id.* §§ 404.1525, 416.925 (describing Appendix 1's purpose, organization, and use). A

6  claimant's impairment is medically equivalent to a listed impairment if it is "at least equal in

7  severity and duration to the criteria of any listed impairment." *Id.* §§ 404.1526(a), 416.926(a). If

8  the claimant's impairment meets or exceeds the requirements of a listed impairment, the claimant

9  is disabled (regardless of age, education, and work experience). *Id.* § 404.1520(a)(4)(iii), (d); *id.* §

10  416.920(a)(4)(iii), (d). If the claimant's impairments do not meet or exceed the requirements of a

11  listed impairment, step four is analyzed. *Id.*

12

        d.  <u>Step Four: Residual Functioning Capacity and Past Relevant Work</u>

13         If the claimant does not have a listed impairment, the ALJ assesses the claimant's residual

14  functional capacity ("RFC") and ability to perform past relevant work. 20 C.F.R. §

15  404.1520(a)(4)(iv), (e); *id.* § 416.920(a)(4)(iv), (e). The ALJ first assesses all the relevant medical

16  and other evidence in the record to determine the claimant's RFC. *Id.* §§ 404.1520(e), 416.920(e).

17  The claimant's RFC gauges the most the claimant can do despite the claimant's limitations. *Id.* §§

18  404.1545(a)(1), 416.945(a)(1). Before making a determination, the SSA is responsible for

19  developing the claimant's complete medical history. *Id.* §§ 404.1545(a)(3), 416.945(a)(3).

20         In the RFC assessment, the ALJ assesses the claimant's physical and mental symptoms and

21  abilities, as well as other abilities affected by the claimant's impairments. *Id.* §§ 404.1545(b)–(d),

22  416.945(b)–(d). With respect to a claimant's physical abilities, "[a] limited ability to perform

23  certain physical demands of work activity, such as sitting, standing, walking, lifting, carrying,

24  pushing, pulling, or other physical functions (including manipulative or postural functions, such as

25  reaching, handling, stooping or crouching), may reduce [a claimant's] ability to do past work and

26  other work." *Id.* §§ 404.1545(b), 416.945(b).

27         With respect to a claimant's mental abilities, "[a] limited ability to carry out certain mental

28  activities, such as limitations in understanding, remembering, and carrying out instructions, and in

United States District Court<br/>Northern District of California

8

responding appropriately to supervision, coworkers, and work pressures in a work setting, may reduce [the claimant's] ability to do past work and other work." *Id.* §§ 404.1545(c), 416.945(c). Additionally, "[s]ome medically determinable impairment(s), such as skin impairment(s), epilepsy, impairment(s) of vision, hearing or other senses, and impairment(s) which impose environmental restrictions, may cause limitations and restrictions which affect other work-related abilities." *Id.* §§ 404.1545(d), 416.945(d). Any physical or mental impairments must be established by objective medical evidence from an acceptable medical source. *Id.* § 404.1521.

Next, the ALJ will compare the claimant's RFC with the physical and mental demands of the claimant's past relevant work. *Id.* §§ 404.1520(f), 416.920(f). If the ALJ determines that the claimant can still perform the past relevant work, then the claimant is not disabled. *Id.* §§ 404.1520(f), 416.920(f). "Past relevant work" is work that the claimant has done in the past 15 years, that qualifies as substantial gainful activity, and that has "lasted long enough for [the claimant] to learn to do it." *Id.* §§ 404.1560(b)(1), 416.960(b)(1). The ALJ will determine whether the claimant can do her past relevant work by evaluating the claimant's testimony on work performed in the past. *Id.* §§ 404.1560(b)(2), 416.960(b)(2). In addition, the ALJ may evaluate the testimony of other people familiar with the claimant's past work, the opinions of a vocational expert ("VE"), or other resources, such as the Department of Labor's Dictionary of Occupational Titles. *Id.* §§ 404.1560(b)(2), 416.960(b)(2).

If the claimant is found not capable of performing past relevant work at Step Four, then the burden of proof shifts to the Commissioner to prove at Step Five that the claimant is not disabled and can adjust to other work. *See Pinto v. Massanari*, 249 F.3d 840, 844 (9th Cir. 2001).

e.   Step Five: Adjustment to Other Work

If the claimant cannot perform past relevant work, the ALJ determines whether the claimant can adjust to other work based on the claimant's age, education, work experience, and RFC. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the claimant is unable to do any other work based on their age, education, work experience, and RFC, they are disabled. *Id.* The ALJ uses the RFC assessment from Step Four to determine whether the claimant can adjust to other work. *Id.* §§ 404.1560(c)(1), 416.920(c)(1). If the ALJ determines that "other work exists in

United States District Court
Northern District of California

significant numbers in the national economy that [the claimant] can do," then the ALJ will find that the claimant is not disabled. *Id.* §§ 404.1560(c)(2), 416.920(c)(2).  The ALJ may meet the Step Five burden in two ways: "(1) the testimony of a VE or (2) by reference to the Medical–Vocational Guidelines at 20 C.F.R. pt. 404, subpt. P, app. 2."  *See Osenbrock v. Apfel*, 240 F.3d 1157, 1161 (9th Cir. 2001).

### C.    Procedural History

#### 1.    SSA Decision

On June 26, 2015, Plaintiff filed his DIB application, alleging that he was unable to function or work since November 16, 2013 as result of HIV, type II diabetes, and depression.  AR 81-83.  The SSA denied the application both initially and upon reconsideration.  AR 102-06; 110-13.  At Plaintiff's request, Administrative Law Judge Nancy Lisewski held a hearing on November 13, 2017.  AR 43-63.  Plaintiff, his attorney, and Nancy Rynd (an impartial Vocational Expert) testified at the November hearing.  *Id.*

On February 13, 2018, the ALJ issued an opinion finding that Plaintiff met the insured status requirements of the Act, but was not disabled under the Act, and ultimately denied Plaintiff's DIB application.  AR 7-29.  Plaintiff subsequently requested a review of the ALJ decision, but the Appeals Council denied Plaintiff's request for review on May 2, 2018.  AR 1-3.  The ALJ used the traditional five-step inquiry to evaluate Plaintiff's claim.  AR 11-12.

At Step One, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged disability onset date (November 16, 2013).  *See* 20 C.F.R. § 404.1571 *et seq*; AR 12.  At Step Two, the ALJ determined that Plaintiff had the following severe medical impairments: HIV, mild degenerative joint disease, type II diabetes, high blood pressure, and depression.  *See* 20 C.F.R. § 404.1520(c); AR 12.  The ALJ also found that these impairments "significantly limit the ability to perform basic work activities as required by SSR 85-28."  AR 12-13.  The ALJ noted that Plaintiff was treated for skin lesions, but that the impairment was non-severe and did not meet the 12-month durational requirement.  *See* 20 C.F.R. § 404.1509; AR 13.

At Step Three, the ALJ noted that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20

1    C.F.R Part 404, Subpart P, Appendix 1." *See* 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526; AR

2    13.  The ALJ considered all of the Plaintiff's impairments individually and together, but found that

3    there was no evidence the impairments met or equaled the criteria for a listed impairment, so

4    disability could not be established solely on medical facts.  *Id.*  Plaintiff's mental impairments did

5    not meet or equal the criteria for a listed impairment because his alleged mental impairments did

6    not result in one extreme or two marked limitations.  AR 13.

7           The ALJ found that Plaintiff had: (1) a mild limitation in understanding, remembering, or

8    applying information; (2) a mild limitation adapting or managing oneself; (3) a moderate

9    limitation interacting with others; and (4) a mild limitation concentrating, persisting, or

10   maintaining pace.  *Id.*  Therefore, there was insufficient evidence for the ALJ to find that

11   Plaintiff's mental disability was serious and persistent, that Plaintiff had a minimal capacity to

12   adjust or "adapt to changes in his environment, or to demands that were not already part of the

13   claimant's daily life."  AR 13-14.  Additionally, the evidence did not show that changes in

14   demands would  increase Plaintiff's symptoms.  AR 14.

15          At Step Four, the ALJ found that Plaintiff had the RFC to "perform light work as defined

16   in 20 C.F.R. § 404.1567(b), except he could perform simple and detailed but not complex work

17   with occasional social interaction with co-workers and the public."  AR 14.  The ALJ followed the

18   mandatory two-step analysis in considering the Plaintiff's symptoms (considering first, whether

19   Plaintiff had an underlying medically determinable physical or mental impairment or impairments

20   that could be shown by medically acceptable diagnostic techniques; and if so, the extent to which

21   the intensity, persistence, and limiting effects of Plaintiff's pain or other symptoms limited his

22   functioning).  *Id.*  To determine plaintiff's ability to do work related activities, the ALJ must

23   consider other evidence in the record if the Plaintiff's claims cannot be substantiated by objective

24   medical evidence.  *Id.*

25          With respect to the first inquiry, the ALJ found that Plaintiff's medically determinable

26   mental and physical impairments "could reasonably be expected to cause the alleged symptoms."

27   AR 16.  At the second stage of the inquiry, the ALJ found that Plaintiff's "statements about the

28   intensity, persistence, and limiting effects" of his symptoms were inconsistent with the record.

United States District Court
Northern District of California

United States District Court
Northern District of California

1    Based on all of the medical evidence in the record, the ALJ found that Plaintiff was unable

2    to perform any of his past relevant work because the demands of that past relevant work exceeded

3    his RFC. 20 C.F.R. § 404.1565; AR 27-28. For example, Plaintiff had prior work experience as a

4    biochemist tech (DOT: 078.261-010, light exertion, SVP 7), research assistant (DOT: 199.267-

5    034, sedentary exertion, SVP 6), public health consultant (DOT: 070.101-046, light exertion, SVP

6    8), and salesclerk. (290.477-014, light exertion, SVP 3). AR 28. The ALJ found that even though

7    Plaintiff could not perform any past relevant work, he had the RFC to perform simple and detailed

8    tasks with some social limitations and light exertional work. AR 22.

9    The ALJ noted that while there were some abnormal findings in the record, the majority of

10   evidence pointed to Plaintiff being able to perform light exertional work. AR 22-23. For

11   example, (1) in 2015, the consultative psychologist noted that Plaintiff was moderately depressed

12   and reported suicidal ideation; (2) Plaintiff's testing performance revealed low average to average

13   range in cognitive functioning with mildly to moderately decreased attention, concentration, and

14   pace; and (3) Plaintiff scored in the markedly impaired range on parts A and B of the Trail Making

15   Test. AR 22. However, the ALJ found that these abnormal findings generally occurred when

16   Plaintiff was noncompliant with medication or after he switched care to a medical doctor on the

17   advice of his attorney. *Id*. The ALJ also found that the record revealed that it was claimant's

18   objective to obtain DIB, and that Plaintiff's worsening symptoms tended to coincide with the

19   progress of his DIB claim. AR 23. The ALJ relied upon Dr. Tobias's note that Plaintiff's effort

20   was decreased during testing and that his lower scores on the Trail-Making Test appeared to

21   reflect a decrease in motivation and not a cognitive deficit. AR 22. .

22   Because the ALJ determined that Plaintiff would be unable to perform past relevant work,

23   the ALJ looked to see if Plaintiff could perform other work based on the claimant's age, education,

24   work experience, RFC, and the Medical Vocational Guidelines. 20 C.F.R. §§ 404.1520(a)(4)(v),

25   416.920(a)(4)(v); AR 28. The ALJ determined that there were a significant number of jobs in the

26   national economy that Plaintiff could perform. AR 28. This finding was based on the testimony

27   from the impartial vocational expert Nancy Rynd. AR 28-29. The vocational expert testified that

28   Plaintiff would be able to perform work as an Office Helper (DOT: 239.567-010, light exertion,

United States District Court
Northern District of California

1   SVP 2, approximately 4,000 jobs nationally), Photocopy Machine Operator (DOT: 207.685-014,

2   light exertion, SVP 2, over 18,000 jobs nationally) or Marker (DOT: 920.687-126, light exertion,

3   SVP 2, over 26,000 jobs nationally).  *Id.*  Based on this testimony and her finding that Plaintiff is

4   able to make a successful adjustment to other work that exists in significant numbers based on his

5   age, education, work experience, and RFC, the ALJ found that Plaintiff is not disabled and thus

6   not entitled to the disability benefits for which he applied.  *Id.*

7       On May 2, 2018, the Appeals Council denied Plaintiff's request for a review of the ALJ's

8   decision.  AR 1.  Thus, the ALJ's decision became the Commissioner's final decision regarding

9   Plaintiff's application.  *Id*.

10                          **2.   Judicial Appeal**

11      On June 20, 2018, Plaintiff filed this appeal challenging Defendant's final decision and

12  denial of disability benefits.  *See* Dkt. No. 1; Pl. Mot. at 1.  The Magistrate Judge issued a Report

13  and Recommendation recommending dismissal for failure to state a claim upon which relief could

14  be granted.  *See* Dkt. No. 5 at 3.  The Court rejected the Report and Recommendation and found

15  that Plaintiff's initial complaint was sufficient because it established a facially plausible claim.

16  *See* Dkt. No. 10 at 2.

17      Plaintiff's primary arguments on appeal are that the ALJ did not properly weigh the

18  evidence in the record and that rejecting the treating physicians' opinions was legal error.  *See* Pl.

19  Mot. at 1-2.  Defendant responds that the ALJ fairly and accurately summarized the evidence of

20  record and properly evaluated all of the opinion evidence.  *See* Def. Mot. at 4.

21  **II.   STANDARD OF REVIEW**

22      The Court has jurisdiction to review final decisions of the Commissioner.  *See* 42 U.S.C. §

23  405(g) ("The [district] court shall have power to enter, upon the pleadings and transcript of the

24  record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social

25  Security, with or without remanding the cause for a rehearing.").  The Court may disturb the

26  Commissioner's decision to deny benefits only if the decision is either not supported by

27  substantial evidence or is based on legal error.  *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir.

28  2005); *see also Wainright v. Secretary of Health and Human Services*, 939 F.2d 680 (9th Cir.

1991).  "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  The evidence must be more than a mere scintilla, but may be less than a preponderance."  *Molina v. Astrue*, 674 F.3d 1104, 1110–11 (9th Cir. 2012) (internal quotation marks and citations omitted).  This standard of review is "highly deferential."  *Valentine v. Astrue*, 574 F.3d 685, 690 (9th Cir. 2009).  "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld."  *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002); *see also Mayes v. Massanari*, 276 F.3d 453, 459 (9th Cir. 2001).

The Court must consider the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the ALJ's conclusion.  *McAllister v. Sullivan*, 888 F.2d 599, 602 (9th Cir. 1989).  The ALJ is responsible for making determinations of credibility and for resolving evidentiary ambiguities, including conflicting medical testimony.  *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989).  Additionally, the Court "may not reverse an ALJ's decision on account of an error that is harmless.  The burden of showing that an error is harmful normally falls upon the party attacking the agency's determination."  *Molina*, 674 F.3d at 1111 (internal quotation marks, brackets, and citations omitted).

## III.   DISCUSSION

The Court addresses both Plaintiff and Defendant's contentions regarding the ALJ's finding of non-disability, specifically the ALJ's evaluation of medical opinion evidence.

### A.   Evaluation of Opinion Evidence

Plaintiff contends that the ALJ failed to properly weigh the opinions of Plaintiff's treating physician (Dr. Wlodarczyk), his treating nurse (NP Friend), Dr. Karasic, and his therapist (Therapist Ahern).  *See* Pl. Mot. at 6-10.  The ALJ gave little weight to their opinions because (1) they were heavily dependent on Plaintiff's subjective report of his symptoms; (2) they were not supported by the overall medical record; (3) they were inconsistent with Plaintiff's previous statements, assessments, and treatment records; and (4) the examination findings were generally mild.  AR 26; Pl. Mot. at 10.  Specifically, Plaintiff contends that the ALJ's reasons for rejecting the various treatment providers were specific, but not legitimate.  Pl. Mot. at 11.  Plaintiff also

14

1   contends that the ALJ incorrectly gave great weight to the contradictory opinions of Drs. Tobias,

2   Blusiewicz, and Morris. *Id.* at 10-11.

3          When determining whether Plaintiff has a medically determinable impairment, the ALJ

4   must consider medical opinions and the relevant evidence. *See* 20 C.F.R. § 404.1527(b). The

5   impairment must be established by objective medical evidence from an acceptable medical source

6   (such as a licensed physician). *See* 20 C.F.R. § 404.1521. There are "three types of physicians:

7   (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the

8   claimant (examining physicians); and (3) those who neither examine nor treat the claimant (non-

9   examining physicians)." *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). Drs. Wlodarczyk and

10  Karasic are treating physicians. *See* Def. Mot. at 4; Rep. at 1.

11         As a general rule, more weight is generally given to the treating physician's opinion, but it

12  "is not . . . necessarily conclusive as to either a physical condition or the ultimate issue of

13  disability." *Magallanes*, 881 F.2d at 751. If the treating physician's opinion is contradicted by

14  other opinions, then the ALJ must provide "specific and legitimate reasons supported by

15  substantial evidence in the record" for rejecting the treating physician's opinion. *Lester*, 81 F.3d

16  at 830 (quotations omitted). The ALJ can do this by examining the evidence in the record and

17  offering interpretations of it, but the ALJ must do more than just state conclusions. *See Reddick v.*

18  *Chater*, 157 F.3d, 715, 725 (9th Cir. 1998). The ALJ is allowed to evaluate medical opinions

19  based on their consistency with the overall record as a whole. *See* 20 C.F.R § 404.1527(c)(4); *Orn*

20  *v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007).

21         NP Friend and Therapist Ahern are not acceptable medical sources, and are instead

22  classified as "other sources." *See* 20 C.F.R § 404.1502(a); Pl. Mot. at 6. Advanced registered

23  nurses are only acceptable sources for claims filed after March 27, 2017 (which does not apply

24  here). *Id.* Plaintiff concedes that neither NP Friend nor Therapist Ahern is an acceptable medical

25  source. *See* 20 C.F.R. § 404.1502(a); *Revels v. Berryhill*, 874 F.3d 648, 665 (9th Cir. 2017)

26  (finding that nurse practitioners are considered other sources and are not acceptable medical

27  sources); *Castaneda v. Astrue*, 344 F. App'x 396, 399 (9th Cir. 2009) (holding that a nurse

28  practitioner is not an acceptable medical source and that the ALJ did not err by giving the nurse

*United States District Court*
*Northern District of California*

practitioner's report little weight);[2] *Michalski v. Colvin*, No. 15-CV-04483-EMC, 2016 WL

4585770 at *4-5 (N.D. Cal. Sept. 2, 2016) (holding that therapist opinions may be afforded less

weight because they are viewed as an "other source" and are not an acceptable medical source);

Pl. Mot. at 6. Because these witnesses are not acceptable medical sources, the ALJ needed only to

provide a germane reason for discounting them. *Molina*, 674 at 1111.

      The Court finds that the ALJ gave specific and legitimate reasons supported by substantial

evidence for giving little weight to the opinions of Drs. Wlodarczyk and Dr. Karasic, discounting

the opinions of NP Friend and Therapist Ahern, and giving greater weight to the opinions of Drs.

Tobias, Blusiewicz, and Morris. *See Lester*, 81 at 830. For example, the ALJ noted that Dr.

Wlodarczyk and NP Friend assessed marked limitations in both social functioning and cognitive

functioning, AR 20, 24, but many physicians (including Plaintiff's) described him as "groomed,"

"polite," "cooperative," and "pleasant," with good eye contact and normal speech. AR 20, 24; *see

e.g.*, *id.* 583, 585, 587, 589, 704, 754, 836. Additionally, in regard to Plaintiff's cognitive

functioning, the ALJ noted that a number of physicians found that Plaintiff had intact memory,

normal speech, and linear, coherent, and logical thought processes. AR 20, 24; *see e.g.*, *id.* 583,

585, 587, 589, 704, 754, 836. Plaintiff also stated multiple times that that he felt less depressed

after taking medications and that he was sleeping better. AR 18. These comments by him, Dr.

Wlodarcyzk, and NP Friend support the ALJ's conclusion that Plaintiff is able to perform

unskilled work with occasional social contact. AR 14, 20, 24; *see e.g.*, *id.* 565, 588, 589, 583,

585, 587, 589, 704, 754, 836; 20 C.F.R § 404.1527(c)(3).

      The ALJ gave little weight to the opinions of Dr. Wlodarczyk and NP Friend because those

opinions were inconsistent with the overall record. AR 26. For example, Dr. Wlodarczyk and NP

Friend submitted medical statements on May 29, 2015, detailing that HIV contributed to

Plaintiff's depression and chronic fatigue. *Id.* Although Plaintiff alleged that his HIV medication

upset his stomach and caused bloating, diarrhea, and joint paint, the ALJ noted that Plaintiff also

told his treatment advisors that he tolerated his medication well, and treatment providers assessed

---

[2] As an unpublished Ninth Circuit decision, *Castaneda* is not precedent, but may be considered for
its persuasive value. *See* Fed. R. App. P. 32.1; CTA9 Rule 36-3.

United States District Court
Northern District of California

1    on multiple occasions that his HIV has been well controlled since taking the medications.  AR 15-

2    16.

3        The Court finds that the ALJ's reasons for discounting the opinions of Dr. Wlodarczyk and

4    NP Friend, combined with the ALJ's interpretation of conflicting medical evidence, constitute

5    specific and legitimate reasons supported by the record.  *See Thomas*, 278 at 957 (holding that the

6    ALJ "gave specific [and] legitimate reasons for discrediting particular opinions").[3]  The ALJ

7    found that (1) the opinions were "overly dependent on the claimant's subjective symptoms;" (2)

8    "the findings on examination were generally mild;" (3) the opinions were "inconsistent with the

9    claimant's statements, other assessments, and subsequent treatment records;" and (4) these

10   individuals are not mental health specialists.  AR 26; *see also* 20 C.F.R § 404.1527(c)(3) (giving

11   less weight to medical opinions from non-specialists).  The ALJ—with extensive citations to the

12   record—concluded that the results of Dr. Wlodarczyk and NP Friend's mental status examinations

13   were mild and that there was no evidence of depression, anxiety, or other agitation.  AR 20.  The

14   ALJ found Plaintiff to be physically able to work because the results of his physical examinations

15   were generally mild, as Plaintiff was never in acute distress, was able to get on and off the exam

16   table without any issues despite allegations of severe fatigue, and was able to exercise.  AR 20-21.

17   Plaintiff also consistently reported a pain score of zero (1-10 scale) when he sought treatment.  AR

18   15-16.

19       The Court also finds that the ALJ properly rejected treating physician Dr. Karasic's

20   opinion because it was heavily based on Plaintiff's subjective reports, was not supported by the

21   overall record, and was inconsistent Plaintiff's previous statements, assessments, and treatment

22   records.  AR 26; *see* 20 C.F.R § 404.1527 (c)(4) ("Generally, the more consistent an opinion is

23   with the record as a whole, the more weight we will give to that opinion"); *Tommasetti v. Astrue*,

24   533 F.3d 1035, 1041 (9th Cir. 2008) (explaining that a finding that medical opinions are heavily

25   based on subjective opinions which are inconsistent with the medical record as a whole is a

26

27   ───────────────
     [3] Additionally, since NP Friend is not an acceptable medical source, his opinion may be given less
28   weight provided that the ALJ gives germane reasons for discounting the opinion.  *See Revels*, 874
     at 665; Pls. Mot. at 6.

17

1    specific and legitimate reason for discounting those opinions).

2        Dr. Karasic diagnosed Plaintiff with major depressive disorder, recurrent and severe, and

3    HIV, AR 738, and opined that Plaintiff was markedly impaired with activities of daily living,

4    concentration and task completion, and adapting to work-like situations, and had a marked

5    limitation in regard to social functioning.  AR 24.  Dr. Karasic also noted that Plaintiff's

6    symptoms were depression, low energy, insomnia, poor appetite, and fleeting suicidal ideation.

7    AR 25-26.  He also noted that Plaintiff had been treated for major depression in the past and

8    continued to be treated for it at the present, but the current depression had not remitted even with

9    medication.  AR 26.  Additionally, "the mental status exam revealed that [Plaintiff] was

10   persistently depressed, calm, and pleasant, except when recounting treatment at his last job."  AR

11   26.  Dr. Karasic found that Plaintiff had a marked impairment in regard to social functioning

12   because he did not have social interactions with others and did not like to leave his apartment.  AR

13   736.

14       The ALJ discounted Dr. Karasic's opinion because the evidence in the record and in the

15   HIV questionnaire showed that Plaintiff could complete household chores, prepare his own meals,

16   complete his own shopping, manage his finances, and generally manage daily living activities.

17   AR 19.  The ALJ determined that the intensity, persistence, and limited effects of his reported

18   symptoms were inconsistent with the record as a whole.  AR 18.  For example, after being

19   prescribed medication, Plaintiff reported that he was less anxious, less depressed, and that he was

20   overall feeling better.  *Id.*  The ALJ also found that the evidence showed that Plaintiff was more

21   socially engaged with others by greeting people and performing charitable acts.  AR 20.  The

22   Court finds that these are specific and legitimate reasons supported by the record for discounting

23   Dr. Karasic's opinion.

24       The ALJ also properly gave little weight to Therapist Ahern because his assessment was

25   not supported by the treatment records that he authored, and Therapist Ahern is not an acceptable

26   medical source.  AR 26; *Michalski*, at *4-5; Pls. Mot. at 6.  Therapist Ahern claimed that Plaintiff

27   missed a quarter of his appointments, his depressive symptoms occurred most days of the week, he

28   lost interest in activities and people, was fatigued, and could not focus, and he had a loss of

United States District Court
Northern District of California

18

1  appetite which resulted in weight loss. AR 24-25. Therapist Ahern also noted that Plaintiff's

2  mental examinations showed someone who was in a severely depressed mood. AR 25. He opined

3  that Plaintiff was markedly limited in interacting with others and adapting or managing oneself,

4  and markedly impaired in regard to concentrating, persistence, and pace because of a lack of

5  energy. *Id.* Additionally, Therapist Ahern believed that Plaintiff would be unlikely to get a job in

6  his current condition, would not be able to return to work for at least a year, and could not perform

7  a job of any description because of his impairments and symptoms. *Id.*

8  However, despite Plaintiff's contentions that he was not improving, treatment notes in the

9  record by Therapist Ahern showed that Plaintiff was improving with treatment. AR 762, 854-56.

10  The ALJ found that this evidence in the record showed an improvement in Plaintiff's overall

11  mentality, and helped him feel less depressed, more hopeful, less stressed, and more engaged with

12  society. AR 18-19. In April 2017, Therapist Ahern noted that Plaintiff reported that he was doing

13  "ok" with his depression, and in May 2017, he noted that Plaintiff looked healthier and less

14  depressed. AR 18. Plaintiff also showed a desire to work again and engage in life. *Id.* These

15  improvements by Plaintiff support the ALJ's decision to discount Therapist Ahern's opinions. *See*

16  *Delegans v. Colvin*, 584 F. App'x 328, 333 (9th Cir. 2014) (evidence of improvement and opinion

17  inconsistent with the majority of treatment notes are germane reasons for discounting evidence

18  from a treatment provider who is not an acceptable medical source).

19  In contrast, the ALJ gave great weight to SSA consultants Drs. Tobias, Bradus,

20  Blusiewicz, and Morris because they assessed that Plaintiff had no to moderate limitations, which

21  was consistent with Plaintiff's RFC and the weight of the record. *See* 20 C.F.R § 404.1527(b); AR

22  23-27. Additionally, the ALJ gave great weight to the GAF scores assessed by treating physician

23  Dr. James Bourgeois. AR 24; *see e.g.*, 565, 583, 585, 588, 589. Dr. Bourgeois assessed Plaintiff's

24  GAF scores to be in the 60-70 range, indicating only mild to moderate symptoms. AR 24.

25  When Dr. Tobias tested Plaintiff, he wrote that the results were likely due to a lack of

26  motivation and effort by Plaintiff, and that the results likely underestimated his actual cognitive

27  ability. AR 22, 704. Dr. Tobias opined that Plaintiff had: (1) no limitation in regard to following

28  or remembering both complex and simple instructions; (2) no to a mild limitation maintaining

United States District Court
Northern District of California

1    adequate pace or persistence performing repetitive tasks; (3) no to a mild limitation interacting

2    with other people on a regular basis; (4) a mild impairment adapting to a change in job routine; (5)

3    a mild limitation maintaining attention or concentration, pace, or persistence when performing

4    complex tasks; and (6) a moderate limitation to withstand the stress of a workday and maintain

5    emotional stability.  AR  24.

6            Dr. Bradus opined that Plaintiff was limited to light exertional work, and the two state

7    agency medical consultants (Drs. Blusiewicz and Morris) opined that Plaintiff "could understand,

8    recall, and carry out simple instructions [but] would episodically have difficulty interacting with

9    the public and co-workers."  AR 23-24.

10           The Court finds that the ALJ provided specific and legitimate reasons for giving the

11   assessments of Drs. Tobias, Bradus, Blusiewicz, and Morris's significant weight, and for

12   discounting the opinions of Plaintiff's treating physicians.  *See Magallanes*, 881 at 753 ("setting

13   out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his

14   interpretation thereof, and making findings" is sufficient for an ALJ to discount contradictory

15   opinions) (citing *Cotton v. Bowen*, 799 F.2d 1403, 1408 (9th Cir. 1986)).[4]  Given the substantial

16   evidence in the record supporting the ALJ's determination, the Court finds that the ALJ did not err

17   in affording the opinions of Plaintiff's treating physicians, NP Friend and Therapist Ahern little or

18   no weight and affording the opinions of the SSA physicians significant weight.

19   //

20   //

21   //

22   //

23   //

24   //

25

26   [4] Similarly, the ALJ noted that state agency consultant Dr. Blusiewicz found that Plaintiff could
     understand, recall, and carry out simple instructions, but had difficulty interacting and
27   communicating with others.  AR 24.  State agency mental consultant Dr. Morris also affirmed
     these findings on June 22, 2016.  *Id.*  The ALJ gave the doctor's opinions significant weight since
28   they were more consistent with the overall treatment record, Plaintiff's treatment history,
     statements, and assessments.  *Id.*

United States District Court
Northern District of California

20

**IV.    CONCLUSION**

      For the foregoing reasons, the Court **DENIES** Plaintiff's motion for summary judgment and **GRANTS** Defendant's motion for summary judgment.  The ALJ's decision is affirmed.  The Clerk is directed to enter judgment in favor of Defendant and close the case.

      **IT IS SO ORDERED.**

Dated:  8/14/2020

HAYWOOD S. GILLIAM, JR.
United States District Judge